## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,        )
                                 )
                Plaintiff,       )
                                 )
        v.                       )        1:23CV701
                                 )
$44,379.00 IN U.S. CURRENCY,     )
                                 )
                Defendant.       )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This in rem forfeiture action comes before the undersigned Magistrate Judge for a recommended ruling on Plaintiff's Motion for Summary Judgment (Docket Entry 16), in connection with which Plaintiff has asserted "that this matter is ripe for judgment because [Claimant Markell] Davis can neither controvert [Plaintiff's] case nor carry his burden of showing that he is an innocent owner of [ D]efendant $44,379.00 in U.S. Currency" (Docket Entry 17 (Brief in Support) at 2; see also Docket Entry 1 at 2 ("Plaintiff brings this action in rem . . . to forfeit and condemn [ D]efendant property.");[1] Docket Entry 7 at 1 ("Claimant Markell Davis . . . files this verified claim and asserts his legal interest and right in [] Defendant in rem.")). (See Docket Entry dated June 5, 2025 (referring instant Motion to undersigned

---

1 This Recommendation omits italicization of Latin phrases from any quotations.

Magistrate Judge).)[2]  Because the record evidence establishes Plaintiff's entitlement to judgment as a matter of law as against Claimant Davis, the Court should grant the instant Motion.

<u>INTRODUCTION</u>

Plaintiff commenced this case by filing a Verified Complaint of Forfeiture "to enforce the provisions of 18 U.S.C. § 981(a)(1)(C)" (Docket Entry 1 at 1) and "to enforce the provisions of 21 U.S.C. § 881(a)(6)" (<u>id.</u>).  In particular, Plaintiff alleged that "[D]efendant property . . ., which was seized on March 7, 2023, in Greensboro, North Carolina" (<u>id.</u> at 2), (A) "constitutes or is derived from proceeds traceable to an offense constituting 'specified unlawful activity' (as defined in 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense, including but not limited to the sale or exchange of a controlled substance in violation of state and federal law" (<u>id.</u> at 1), and (B) "was furnished or intended to be furnished in exchange for a controlled substance, in violation of the Controlled Substances Act, 21 U.S.C. §§ 801 et seq., or represents proceeds traceable to such an exchange" (<u>id.</u>; <u>see also</u> Docket Entry 1-1 at 2-3 (setting

---

2  "Under the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B), a district court may, without the parties' consent, designate a magistrate [judge] to consider a dispositive motion, such as the one before [the Court], for summary judgment." <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983).  "After considering such a motion, a magistrate [judge] must submit . . . recommendations for the [motion's] disposition . . . ."  <u>Id.</u> (internal quotation marks omitted).

out averments, in support of Verified Complaint, that, on March 7, 2023, while "conducting an operation at the Piedmont Triad International Airport," law enforcement officers "noticed a blue hard-shell bag destined to San Francisco" with a "tag show[ing] that it belonged to . . . [Claimant] Davis," to which a trained dog later "gave a positive alert for the presence of illegal drug odor" (all-caps font omitted)), 3-6 (describing drug dog's training), 6-10 (detailing circumstances surrounding consent searches of Claimant Davis's checked bag, as well as his duffel bag and fanny pack, and seizure of Defendant currency from latter two bags)).

Claimant Davis subsequently "file[d ]his verified claim" (Docket Entry 7 at 1), along with an answer, which asks, inter alia, for entry of an "[o]rder that all of [D]efendant property be released and surrendered to [him]" (Docket Entry 8 at 7). After ten months for discovery (see Docket Entry dated Nov. 17, 2023 (setting discovery deadline, consistent with Local Rule 16.1(a)(5), of February 15, 2024); Text Order dated Jan. 23, 2024 (extending discovery deadline to April 16, 2024); Text Order dated Mar. 23, 2024 (extending discovery deadline to June 17, 2024); Text Order dated June 22, 2024 (extending discovery deadline to September 20, 2024)), Plaintiff filed the instant Motion "mov[ing] for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure" (Docket Entry 16 at 1), supported by five "[e]xhibits" (id. (referring to Docket Entries 16-1 - 16-5)). Claimant Davis

responded (see Docket Entry 21 (the "Response")) and Plaintiff replied (see Docket Entry 22 (the "Reply")).

DISCUSSION

"The Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ('Supp[lemental] R[ules]') are applicable to in rem forfeiture actions. The Federal Rules of Civil Procedure apply so long as they are not 'inconsistent with' the Supplemental Rules." United States v. $795,652.33 in Funds Seized from Acct. XXXXXX1607 with E. W. Bank, C/A No. 3:13-2624, 2014 WL 6749118, at *1 (D.S.C. Dec. 1, 2014) (unpublished) (second parenthetical omitted) (quoting Supplemental Rule A(2)); accord United States v. $2,200,000 in U.S. Currency, Civ. No. 12-3501, 2014 WL 1248663, at *5 (D. Md. Mar. 26, 2014) (unpublished); see also United States v. 2291 Ferndown Ln., Keswick Va. 22947-9195, No. 3:10CV37, 2011 WL 2441254, at *2 (W.D. Va. June 14, 2011) (unpublished) (to same effect but citing Supplemental Rule G(1)). Under the Federal Rules of Civil Procedure, "[t]he [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material factual dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering summary judgment, the Court

4

"tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party . . . ." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

"Applying the summary judgment standard in a civil forfeiture action is no different than in any other civil case." United States v. McClellan, 44 F.4th 200, 205 (4th Cir. 2022); see also, e.g., id. (quoting Federal Rule of Civil Procedure 56(a) and Anderson in discussion of summary judgment standard); United States v. $200,000 in U.S. Currency, 210 F. Supp. 3d 788, 791 (M.D.N.C. 2016) (Biggs, J.) (holding that Federal Rule of Civil Procedure 56 "standard applies in forfeiture cases"); United States v. $15,795.00 in U.S. Currency, 197 F. Supp. 3d 827, 833 (M.D.N.C. 2016) (Tilley, S.J.) ("Summary judgment can be appropriate in civil forfeiture cases."); United States v. $2,990.00 in U.S. Currency, No. 1:13CV62, 2014 WL 6386908, at *3 (M.D.N.C. Nov. 14, 2014) (unpublished) (Osteen, C.J.) ("[I]n civil forfeiture actions[,] summary judgment is appropriate when there is no genuine dispute as to any material fact."). Accordingly, as a general proposition, Claimant Davis (as the non-movant) "is entitled to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, and all internal conflicts in it resolved favorably to him." Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (internal brackets and quotation marks omitted). However, "[w]hen opposing parties tell two

5

different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Harris v. Pittman, 927 F.3d 266, 276 (4th Cir. 2019) ("*Scott* is the exception, not the rule. . . .   Summary judgment is proper under *Scott* only when there is evidence . . . of undisputed authenticity that shows some material element of the plaintiff's account to be blatantly and demonstrably false." (internal quotation marks omitted)).

To sum up, if "a reasonable jury could return a verdict for [Claimant Davis], then a genuine factual dispute exists and summary judgment is improper." Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 959 (4th Cir. 1996); see also United States v. $25,325 in U.S. Currency, No. 1:21CV584, 2023 WL 7409254, at *8 (M.D.N.C. Nov. 9, 2023) (unpublished) (Biggs, J.) ("To prevail on its motion for summary judgment, the Government must show an entitlement to a forfeiture judgment as a matter of law." (internal quotation marks omitted)).  "In essence, the analysis concerns 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that [Plaintiff] must prevail as a matter of law.'" United States v. $864,400.00 in U.S. Currency, No. 1:05CV919, 2009 WL 2171249, at *2 (M.D.N.C. July

Case 1:23-cv-00701-WO-LPA   Document 24   Filed 08/19/25   Page 6 of 36

20, 2009) (unpublished) (Tilley, S.J.) (quoting Anderson, 477 U.S. at 251-52), aff'd, 405 F. App'x 717 (4th Cir. 2010).

Turning to other legal standards applicable to this in rem forfeiture action, the Court should note first that Plaintiff "bears the burden 'to establish, by a preponderance of the evidence, that [Defendant] property is subject to forfeiture.'" McClellan, 44 F.4th at 205 (quoting 18 U.S.C. § 983(c)(1)). For purposes of summary judgment, consistent with the previously quoted allegations of the Verified Complaint, Plaintiff has contended:

> [T]he evidence shows by a preponderance that [ D]efendant $44,379.00 in U.S. Currency constitutes or is derived from proceeds traceable to the sale or exchange of a controlled substance, or was furnished or intended to be furnished in exchange for a controlled substance, or is proceeds traceable to such an exchange, in violation of the Controlled Substances Act. As a result, [Defendant] U.S. Currency is subject to forfeiture pursuant to 18 U.S.C. § 981 and 21 U.S.C. § 881.

(Docket Entry 17 at 14 (emphasis added).) Those two referenced statutes do, in fact, recognize those grounds for forfeiture. See $200,000 in U.S. Currency, 210 F. Supp. 3d at 795 (documenting (A) that "[Section] 881(a)(6) . . . permits forfeiture of 'all moneys furnished, or intended to be furnished by any person in exchange for a controlled substance . . . [and] all proceeds traceable to such an exchange'" and (B) that "[Section] 981(a)(1)(C) . . . provides for forfeiture of any property that 'constitutes or is derived from proceeds traceable to any offense constituting specified unlawful activity,'" which "includes

7

'dealing in a controlled substance'" (emphasis added) (internal brackets, ellipsis, and some quotation marks omitted) (quoting 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C))).

To carry its burden under those statutes to show by a preponderance of the evidence "that [Defendant] currency was intended to be furnished in exchange for drugs in other transactions or was proceeds from previous drug transactions," United States v. $115,471.00 in U.S. Currency, No. 1:11CV318, 2017 WL 2842778, at *4 (M.D.N.C. July 3, 2017) (unpublished) (Tilley, S.J.), Plaintiff "may rely on circumstantial evidence," id. (citing United States v. Herder, 594 F.3d 352, 364 (4th Cir. 2010)); accord, e.g., $2,990.00 in U.S. Currency, 2014 WL 6386908, at *4, "and the 'proceeds need not be tied to any particular identifiable drug transaction,'" $115,471.00 in U.S. Currency, 2017 WL 2842778, at *4 (internal brackets omitted) (quoting United States v. 998 Cotton St., Forsyth Cnty., No. 1:11CV356, 2013 WL 1192821, at *13 (M.D.N.C. Mar. 22, 2013) (unpublished) (Schroeder, J.)); accord, e.g., $200,000 in U.S. Currency, 210 F. Supp. 3d at 795. Moreover, "[i]n determining whether [Plaintiff] has met its burden, [the C]ourt[] should not view each piece of evidence in isolation, but rather consider the totality of the evidence as a whole and in the appropriate context." United States v. Currency, U.S., $147,900.00, 450 F. App'x 261, 263 (4th Cir. 2011) (internal quotation marks omitted).

Here, in seeking summary judgment, Plaintiff summarized the "totality of the evidence as a whole," id., as follows:

> [Claimant] Davis is a convicted drug trafficker who previously has been caught with dealer amounts of marijuana, baggies, and a vacuum sealer. He has a history of taking one-way flights cross-country to and from San Francisco, a known source for drug distribution. He books travel on short notice, as he did on this occasion, and takes short turnaround trips. Indeed on the day in question, [Claimant] Davis told law enforcement that he planned to return from San Francisco in two days. Such travel is consistent with travelling patterns of drug and drug money couriers. In addition, [Claimant] Davis was traveling with a hard-shell suitcase, a type of luggage known to be used by traffickers to transport illegal drugs. A canine unit positively alerted to the odor of illegal drugs on the suitcase as well as on the . . . fanny pack that [Claimant] Davis was carrying. The canine also positively alerted to the odor of narcotics on the bulk U.S. Currency itself.
>
> [Claimant] Davis was travelling with bulk U.S. Currency rubber banded and organized by denomination. Bulk currency organized in this manner is indicated [sic] of street-level drug sale proceeds. . . .
>
> When asked to explain why he was carrying the U.S. Currency, [Claimant] Davis stated that he was going to buy two French bulldogs costing $20,000 each. However, [Claimant] Davis could [not] produce any evidence showing his plan to spend $40,000.00 on dogs, and did not have any pet supplies or dog care products with him. [Claimant] Davis claimed that someone named "Jose" was selling him the dog[s], and that he had exchanged messages with [the] seller on his phone. [Claimant] Davis . . . later contradicted himself by denying ever communicating with the seller by text.
>
> [Claimant] Davis's stories as to the source of the bulk U.S. Currency are inconsistent and unsupported by the evidence. When asked about the U.S. Currency he was carrying, [he] claimed to have "a couple of LLCs in [his] name and [an] investment group" named "Priority Investment Wide" that invests in rental properties. [Claimant] Davis has not produced evidence of any

9

> legitimate business or business income. Now, in
> litigation, [he] admits that [Defendant] U.S. Currency is
> not derived from a business venture, and claims that the
> money exclusively is from online sports gambling.
> [Claimant] Davis's shifting stories are evidence in favor
> of forfeiture. [Claimant] Davis also made inconsistent
> statements about the duration of his trip to San
> Francisco. He told law enforcement that he was planning
> to return from San Francisco in two days because his son
> had baseball practice. He then testified at his
> deposition that he had no timetable for his return and
> might have remained out West to take in a Giants or
> Athletics game (which would not take place for 3+ weeks)
> or travel to other cities.
>
> [Claimant] Davis's claim that the U.S. Currency comes
> from gambling with DraftKings and FanDuel is refuted by
> the evidence including [his] own stipulations. After
> reviewing his DraftKings and FanDuel account records,
> [Claimant] Davis stipulated to facts showing he was an
> unsuccessful gambler who incurred a net loss of
> $29,366.40 during the period from February 1, 2021, up to
> the time of the seizure of [Defendant] U.S. Currency on
> March 7, 2023. In addition, although [Claimant] Davis
> considers himself a professional gambler, he does not
> keep books or records of his gambling activities . . . .

(Docket Entry 17 at 16-19 (internal citations and footnotes
omitted); see also id. at 20 ("[Claimant] Davis does not have
sufficient legitimate, verifiable income to explain how he
accumulated [ D]efendant $44,379.00 in U.S. Currency. . . .
[Claimant] Davis now claims that all of his income is from gambling
with DraftKings and FanDuel, but stipulated to facts showing that
he lost nearly $30,000 over the course of the 25 months leading up
to the seizure. In addition, [he] had significant expenditures
during this time. These include $2,500.00 to $3,000.00 in monthly
living expenses ($30,000.00 - $36,000.00 per year). These also
include over $14,000.00 in discretionary purchases . . . .").)

10

That summary – drawn from the Brief in Support's more detailed recitation of the evidence with record citations (see id. at 2-12) – thus highlights at least ten different factual bases substantiating Plaintiff's position that Defendant $44,379.00 in U.S. Currency constitutes (A) funds intended to purchase illegal drugs for sale and/or (B) proceeds of illegal drug sales:

1) Claimant Davis's prior record as a "drug trafficker" (id. at 16; see also id. at 8-9 (setting out details of Claimant Davis's 2018 drug convictions and citing Docket Entry 16-1, ¶ 40), 16-17 n.5 (providing rationale and supporting authority for admissibility of "[e]vidence of [Claimant] Davis's 2018 convictions for drug offenses . . . under Fed. R. Evid. 404(b)," including "to show . . . prepar[ation] and plann[ing for] use [of D]efendant currency" to buy illegal drugs, as well as "to show that [Claimant] Davis was aware of conventional methods of drug trafficking, which here include the transportation of bulk currency across the country to a location that is a major source of bulk illegal drugs"));[3]

_____

3 Plaintiff's proffered basis for admission of this evidence thus distinguishes this case from a recent case in which "the Government ask[ed the Fourth Circuit] to make exactly the kind of forbidden propensity inference that the Federal Rules of Evidence prohibit," McClellan, 44 F.4th at 206 (internal quotation marks omitted); see also id. ("Evidence of a prior crime may be admissible for purposes other than propensity . . . ."); $15,795.00 in U.S. Currency, 197 F. Supp. 3d at 835 (citing, as part of "totality of the circumstances [t]here favor[ing] the Government['s forfeiture claim]," fact that the claimant "ha[d] a history of violating the Controlled Substances Act, as he pled guilty to conspiracy to sell and distribute cocaine in March 2003 for which

(continued...)

11

2) Claimant Davis's "history of taking one-way flights cross-country to and from San Francisco, a known source for drug distribution" (id. at 16-17; see also id. at 3 ("San Francisco is a known source for drug distribution . . . ." (citing Docket Entry 16-1, ¶ 6 and Docket Entry 16-2, ¶ 5))), which he "book[ed ] on short notice" (id. at 17), "consistent with travelling patterns of drug and drug money couriers" (id.; see also id. at 7 ("Drug traffickers and couriers often take bulk currency to California to purchase bulk quantities of illegal drugs and then attempt to smuggle the purchased drugs back to the Greensboro, North Carolina area." (citing Docket Entry 16-1, ¶ 33, Docket Entry 16-2, ¶ 21, and Docket Entry 16-3, ¶ 19)), 9 (setting out details of Claimant Davis's attempted air travel on March 7, 2023, as well as prior air travel on March 5 and 8, 2022, August 3, 2022, and January 24, 2023, and citing Docket Entry 16-1, ¶¶ 42, 43));[4]

---

3(...continued)
he served over nine years in federal prison"); United States v. $119,030.00 in U.S. Currency, 955 F. Supp. 2d 569, 586 (W.D. Va. 2013) (describing the claimant's "previous drug conviction" as "probative evidence that the money in this case was related to illegal drug activity").

4 In forfeiture cases, "courts recognize that travel to a destination that is a known source of drugs is a factor to consider," United States v. $40,000.00 in U.S. Currency, Nos. 5:17CV398, 5:17CV485, 2018 WL 2371098, at *4 (E.D.N.C. May 24, 2018) (unpublished), as well as that "fl[ying] on a one-way ticket . . . is evidence in favor of forfeiture," United States v. $124,700 in U.S. Currency, 458 F.3d 822, 826 (8th Cir. 2006).

3) Claimant Davis's use, for travel to San Francisco on March 7, 2023, of a lightly-filled, "hard-shell suitcase . . . known to be used by traffickers to transport illegal drugs" (id. at 17; see also id. at 3 ("The bag was light in weight . . . . [H]ard-shell bags are often used because drug traffickers or couriers believe they mask the odor of drugs better than soft bags." (citing Docket Entry 16-1, ¶ 6 and Docket Entry 16-2, ¶ 5)));

4) the trained drug dog's "positive[] alert[] to the odor of illegal drugs on [Claimant Davis's hard-shell] suitcase as well as . . . [his] fanny pack" (id. at 17; see also id. at 3 (describing alert on hard-shell suitcase and citing Docket Entry 16-1, ¶ 7 and Docket Entry 16-3, ¶ 10), 3-4 (detailing training and certification of drug dog and handler and citing Docket Entry 16-1, ¶¶ 8, 9, 11-15 and Docket Entry 16-3, ¶¶ 1, 2, 4-6, 8), 5-6 (describing alert on fanny pack and citing Docket Entry 16-1, ¶¶ 22, 23, 26, Docket Entry 16-2, ¶¶ 12, 14, and Docket Entry 16-3, ¶¶ 12, 13));[5]

5) the trained drug dog's "positive[] alert[] to the odor of narcotics on [Defendant] U.S. Currency itself" (id. at 17; see also id. at 8 (describing alert on Defendant currency and citing Docket

_____

5 The evidentiary summary in Plaintiff's Brief in Support also states that the trained drug dog "positively alerted to the odor of illegal drugs . . . on the duffel bag . . . that [Claimant] Davis was carrying" (Docket Entry 17 at 17), but the Brief in Support's actual (more detailed) recitation of the evidence with record citations does not document any such alert (see id. at 2-12) and the supporting declarations similarly make no mention of it (see Docket Entries 16-1, 16-2, 16-3).

13

Entry 16-1, ¶¶ 37, 38, Docket Entry 16-2, ¶ 24, and Docket Entry 16-3, ¶ 23));

6) Claimant Davis's attempt, on March 7, 2023, to "travel[ cross-country] with bulk U.S. Currency rubber banded and organized by denomination" (id. at 17), "in th[e] manner . . . of street-level drug sale proceeds" (id.; see also id. at 4 ("The currency [in the duffel bag] was concealed in various socks and organized by denominations of $1, $5, $20, $50, and $100. Most of the currency was rubber-banded by denomination." (citing Docket Entry 16-1, ¶¶ 17, 18 and Docket Entry 16-2, ¶ 8)), 6 ("The currency [in the fanny pack] was rubber-banded by denomination." (citing Docket Entry 16-1, ¶¶ 28, 29, Docket Entry 16-2, ¶¶ 16, 17, and Docket Entry 16-3, ¶¶ 14, 15)), 7 ("Proceeds of illegal drug sales are often kept and transported as bulk currency banded by specific denominations . . . ." (citing Docket Entry 16-1, ¶ 33, Docket Entry 16-2, ¶ 21, and Docket Entry 16-3, ¶ 19)));

7) Claimant Davis's implausible "expla[nation that] he was carrying [Defendant] U.S. Currency . . . to buy two French bulldogs costing $20,000 each" (id. at 17), without "produc[ing] any evidence showing his plan to spend $40,000.00 on dogs" (id.); see also id. at 5 ("[Claimant] Davis . . . stated that he was traveling to San Francisco to buy two French bulldogs. . . . [Claimant] Davis never provided investigators with any documentation of his

14

purchase of dogs." (citing Docket Entry 16-1, ¶¶ 19, 21 and Docket Entry 16-2, ¶¶ 9, 11)));

8) "[Claimant] Davis's [provision of] stories as to the source of [Defendant] U.S. Currency [that] are inconsistent" (id. at 18), in that, "[w]hen asked about the U.S. Currency he was carrying, [Claimant] Davis [first] claimed to have 'a couple of LLCs in his name and [an] investment group' named 'Priority Investment Wide' that invests in rental properties" (id. (internal brackets omitted); accord id. at 5 (citing and quoting Docket Entry 16-1, ¶ 19 and Docket Entry 16-2, ¶ 9)), but later "admit[ted] that [Defendant] U.S. Currency [wa]s not derived from a business venture" (id. at 18; see also id. at 5 ("[Claimant] Davis did not produce documentation of any legitimate business or business income, and[,] in discovery, stated that [ D]efendant U.S. Currency 'is not derived from a business venture.'" (quoting Docket Entry 16-4 at 7)));

9) "Claimant Davis's "inconsistent statements about the duration of his trip to San Francisco" (id. at 18), i.e., "[h]e told law enforcement that he was planning to return from San Francisco in two days" (id.; accord id. at 4 (citing Docket Entry 16-2, ¶ 7)), but "then testified in his deposition that he had no timetable for his return and might have remained out West to take in a Giants or Athletics game (which would not take place for 3+ weeks)" (id. at 18; accord id. at 11-12 (citing Docket Entry 16-5

15

at 11, 13, 15-16); see also id. at 12 n.2 (documenting schedule for Giants and Athletics)); and

10) Claimant Davis's false "claim that [Defendant] U.S. Currency comes from gambling with DraftKings and FanDuel [which wa]s refuted by the evidence including [his] own stipulations" (id. at 18; see also id. at 6 (recounting Claimant Davis's statement to law enforcement officers intimating that Defendant U.S. Currency came from his success as "'a sports wagerer,'" who "'hit often,'" including "'hit[ting] 136,000 on Draft Kings,'" and citing and quoting Docket Entry 16-1, ¶ 32 and Docket Entry 16-3, ¶ 18), 10 ("In discovery, [Claimant] Davis asserted that he is a professional gambler, and [D]efendant $44,379.00 in U.S. Currency was winnings from his gambling with the online wagering platform known as DraftKings." (citing Docket Entry 16-4 at 2)), 10-11 (juxtaposing Claimant Davis's account of his reliance on income from gambling to pay his expenditures with his stipulations about his documented losses from gambling and citing Docket Entry 16-4 at 2-4 and Docket Entry 16-5 at 12, 33, 54, 57-67)).

Contrastingly, in the Response "opposing Plaintiff's [instant M]otion, Claimant [Davis] d[id] not cite the record or present a single piece of affirmative evidence disputing Plaintiff's factual assertions," $2,990.00 in U.S. Currency, 2014 WL 6386908, at *4. (See Docket Entry 21 at 1-4.) "Rather, Claimant [Davis] argue[d] that [Plaintiff] failed to carry its burden based on the evidence

16

presented," $2,990.00 in U.S. Currency, 2014 WL 6386908, at *4, and
(in doing so) only "argu[ed] that [Plaintiff] failed to meet its
burden of proving by a preponderance of the evidence that
[Defendant] $44,379.00 in U.S. Currency is subject to forfeiture
under 18 U.S.C. [§] 981(a)(1)(C)" (Docket Entry 21 at 1 (emphasis
added); see also id. at 4 ("[Plaintiff] has failed to meet its
burden of proving by a preponderance of the evidence that
[Defendant] $44,379.00 in U.S. Currency is subject to forfeiture
under 18 U.S.C. [§] 981(a)(1)(C)." (emphasis added) (italics and
internal citation omitted)), without disputing Plaintiff's claim
for forfeiture under 21 U.S.C. § 881(a)(6) (see id. at 1-4).
Claimant Davis's focus on Section 981(a)(1)(C) alone looms large
because, whereas Section 981(a)(1)(C) authorizes forfeiture **solely**
of "proceeds traceable to . . . any offense constituting 'specified
unlawful activity' . . . or a conspiracy to commit such offense,"
18 U.S.C. § 981(a)(1)(C) (emphasis added), Section 881(a)(6)
authorizes forfeiture of **both** "moneys . . . furnished or intended
to be furnished by any person in exchange for a controlled
substance," 21 U.S.C. § 881(a)(6) (emphasis added), **and** "proceeds
traceable to such an exchange," id. (emphasis added).

    More pointedly, the Response does not oppose the instant
Motion on grounds that a material factual dispute exists as to
Plaintiff's claim for forfeiture of Defendant currency as "moneys
. . . intended to be furnished by any person in exchange for a

controlled substance," id., and, due to that failure to "raise . . . [such] grounds in the[ R]esponse, . . . [such] grounds are deemed abandoned," Rhoads v. Guilford Cnty., 751 F. Supp. 3d 590, 601 n.4 (M.D.N.C. 2024) (Schroeder, J.), appeal filed, No. 24-2035 (4th Cir. Oct. 14, 2024). "Nonetheless, [the Fourth Circuit has held (A)] that [a] district court incorrectly grant[s] summary judgment . . . based only on [a non-movant's] purported concession," Palmer v. West Virginia Div. of Corr. & Rehab., No. 23-7120, 2024 WL 4449419, at *1 (4th Cir. Oct. 9, 2024) (unpublished) (italics in original), and (B) that "[a] non-mov[ant's ] failure to respond to a summary judgment motion – or a specific argument therein – does not relieve a district court of its duty to consider if the moving party is entitled to judgment as a matter of law," id. (emphasis added) (citing Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir. 1993)). The Court therefore should proceed with consideration of Plaintiff's entitlement to judgment as a matter of law based on the record.

In that regard, the Court next should note that Claimant Davis has not challenged the admissibility – for lack of relevance, unfair prejudice, hearsay, etc. – of any piece of evidence marshaled by Plaintiff. (See Docket Entry 21 at 1-4.)[6] Nor does

_____

6 The Court's Local Rules make clear that "a party may assert evidentiary objections in its response . . . to factual allegations contained in memoranda . . . supporting . . . motions for summary judgment . . . ." M.D.N.C. LR 7.6; see also Fed. R. Civ. P. (continued...)

18

the Response contest in _any_ fashion the probative value of the
first three sets of facts within Plaintiff's above-quoted summary:
(1) Claimant Davis's prior record as a "drug trafficker" (Docket
Entry 17 at 16); (2) his "history of taking one-way flights cross-
country to and from San Francisco, a known source for drug
distribution" (_id._ at 16-17), which he "book[ed ] on short notice"
(_id._ at 17), "consistent with travelling patterns of drug and drug
money couriers" (_id._); and (3) his utilization on March 7, 2023, of
a "hard-shell suitcase . . . known to be used by traffickers to
transport illegal drugs" (_id._).  (_See_ Docket Entry 21 at 1-4.)[7]
Instead, Claimant Davis (at best) has offered only conclusory
counter-arguments (unsupported by any record citations) regarding
the seven other factual predicates (listed above) on which
Plaintiff principally has relied.  (_See id._)

Starting with items four and five from that list, i.e., the
trained drug dog's "positive[] alert[] to the odor of illegal drugs

_____

6(...continued)
56(c)(2) ("A party may object that the material cited to support or
dispute a fact cannot be presented in a form that would be
admissible in evidence.").

7 Claimant Davis's failure to address those three factual
matters "leave[s] uncontroverted those facts [as] established by
the [exhibits filed with the instant M]otion," _Custer_, 12 F.3d at
416.  The Response also fails to address the record evidence
(discussed above) showing that Claimant Davis gave inconsistent
statements about material matters (_see_ Docket Entry 21 at 1-4);
rather, the Response merely asserts (without argument or authority)
that "[Plaintiff's] reliance on inconsistent statements . . . is
speculative and does not meet the preponderance of the evidence
standard" (_id._ at 4).

19

on [Claimant Davis's hard-shell] suitcase as well as on [his] . . . fanny pack" (Docket Entry 17 at 17) and the trained drug dog's "positive[] alert[] to the odor of narcotics on [Defendant] U.S. Currency itself" (id.), the Response contends:

> [Plaintiff's] case relies heavily on the alert by the drug-detection canine . . . to [Claimant] Davis's checked bag. However, no illegal drugs were found in th[at] bag or any of [Claimant] Davis's belongings. The Fourth Circuit has emphasized that[,] while a canine alert may provide probable cause, it is not conclusive evidence of illegal activity. Th[is C]ourt must consider the totality of the circumstances, including the absence of drugs or other contraband.

(Docket Entry 21 at 2 (internal citation omitted) (citing United States v. Cotton, No. 06-4530, 2007 WL 664909 (4th Cir. Mar. 6, 2007) (unpublished)); see also id. at 3 ("[T]he absence of drugs or other contraband in [Claimant] Davis's belongings undermines the probative value of the canine alert.").)

Those contentions miss the mark for at least three reasons. First, the lengthy litany of evidence presented by Plaintiff to support the instant Motion (detailed above) belies any suggestion that it "relies heavily on the alert by the drug-detection canine . . . to [Claimant] Davis's checked bag" (id. at 2 (emphasis added)); that alert represents but one of at least ten facts (or clusters of facts) tending to show "that [Defendant] currency was intended to be furnished in exchange for drugs in other transactions or was proceeds from previous drug transactions," $115,471.00 in U.S. Currency, 2017 WL 2842778, at *4. Claimant

20

Davis's related assertion that "[t]he Fourth Circuit has emphasized that . . . a canine alert . . . is not <u>conclusive</u> evidence of illegal activity" (Docket Entry 21 at 2 (emphasis added) (citing <u>Cotton</u>, 2007 WL 664909)) similarly lacks salience because Plaintiff's forfeiture claim does <u>not</u> depend on treatment of the positive alerts on Claimant Davis's bag as "<u>conclusive</u> evidence of illegal activity" (<u>id.</u> (emphasis added)). Furthermore, the decision cited by Claimant Davis on this point actually does <u>not</u> say anything about how much weight, beyond "provid[ing] ample support for [a] finding of probable cause," <u>Cotton</u>, 2007 WL 664909, at *2, a positive alert by a trained drug dog may carry, <u>see</u> <u>id.</u>

Second, as properly stated by Plaintiff in the Reply, "the absence of narcotics in [Claimant Davis's hard-shell] bag does not mean that the K-9 alert was faulty" (Docket Entry 22 at 3), as "the dog may have smelled the residual odor of drugs previously in the [bag]," <u>Florida v. Harris</u>, 568 U.S. 237, 245 (2013). Indeed, "[a] well-trained drug-detection dog *should* alert to [residual drug] odors . . . ." <u>Id.</u> at 249 (italics in original). Accordingly, the record provides no basis to discount the validity of the trained drug dog alerts in this case, particularly given Claimant Davis's failure to present any evidence calling into question the dog's training. <u>See, e.g.</u>, <u>$200,000 in U.S. Currency</u>, 210 F. Supp. 3d at 795 ("'[E]vidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient

reason to trust his alert.'  As such, an alert from a properly trained canine is entitled to a presumption of reliability." (internal citation omitted) (quoting <u>Harris</u>, 568 U.S. at 246)).[8]

Third, the Response's above-quoted contentions do not account for the "positive[] alert[] to the odor of narcotics on [Defendant] U.S. currency itself" (Docket Entry 17 at 17).  (<u>See</u> Docket Entry 21 at 2 (addressing only alert on hard-shell bag), 3 (referring only to "absence of drugs or other contraband in [Claimant] Davis's belongings").)  And – as courts (including members of this Court) have held in similar situations – that "positive alert also helps prove the connection between [Defendant] currency and drug trafficking both because of the scientific evidence supporting the probative value of dog alerts generally and because [Claimant Davis has not disputed that this dog] was properly trained and properly handled and has a proven record of reliability."  <u>United States v. $98,699.60 in U.S. Currency</u>, No. 5:13CV585, 2017 WL 750701, at *18 (E.D.N.C. Feb. 23, 2017) (unpublished); <u>see also, e.g., id.</u> (explaining that a properly trained drug "dog alerts to volatile odors from illegal narcotics that dissipate quickly" and, "[t]hus, [such] dogs do not alert to innocently tainted currency in general

---

8 Consistent with this authority, Plaintiff's forfeiture theory posits that Claimant Davis obtained drugs in California for sale in North Carolina and took proceeds of such sales (including Defendant currency) to California to pay off prior drug deals or to buy more drugs, such that one would not expect to find drugs in his bags bound for California but instead would expect to find therein the residual odor of drugs he recently transported from California.

circulation but only to currency that 'has been exposed to large amounts of illicit [drugs] within the very recent past'" (quoting United States v. Funds in the Amount of Thirty Thousand Six Hundred Seventy Dollars, 403 F. 3d 448, 459 (7th Cir. 2005))); $200,000 in U.S. Currency, 210 F. Supp. 3d at 795-96 (crediting dog's "alert[s] to the [d]efendant [c]urrency" in "conclud[ing] that the evidence offered by the Government, taken as a whole, [wa]s sufficient to demonstrate that [the d]efendant [c]urrency constitutes or is traceable to proceeds for illegal activity involving controlled substances"); $15,795.00 in U.S. Currency, 197 F. Supp. 3d at 835 (citing dog's "alert[] to the odor of narcotics at the one envelope that contained the defendant currency" as among facts "mak[ing] it more likely true than not that the defendant currency [wa]s subject to forfeiture as proceeds of a drug offense").

Claimant Davis's attack on the sufficiency of the remaining record facts which Plaintiff has highlighted likewise falls short. To begin, the Response baldly declares that "[C]laimant [Davis] has provided plausible explanations for the source and intended use of the funds, which [Plaintiff] has not adequately rebutted" (Docket Entry 21 at 1-2), i.e., he has "consistently stated that the money was intended to purchase two French bulldogs and that he is a sports wagerer who has won significant amounts of money on DraftKings" (id. at 3; see also id. ("[ C]laimant [Davis's] explanation that the funds were intended to purchase French

23

bulldogs is plausible and has not been disproven by [Plaintiff].").) In fact, as previously documented, (A) Claimant Davis's story about the source of Defendant currency (i) changed over the course of his contact with law enforcement and discovery (from proceeds of business ventures to proceeds of gambling), and (ii) proved false (as he earned no business income and lost money gambling),[9] while (B) his story about the intended use of Defendant currency (though consistent) strains credulity (because he provided no documentation for and only vague details about any such planned purchase, because he gave inconsistent statements about the length of his planned travel, and because a law-abiding person with substantial monthly expenses, no income, and large gambling losses would not fly across the country to pay $40,000 cash for two dogs).

_____

9 The record contains Claimant Davis's verified interrogatory response stating that "[Defendant] currency . . . result[ed from] his gambling activity" (Docket Entry 16-4 at 2), as well as that "[his] bank statements and DraftKings receipts support th[at] answer" (id.). Generally, the summary judgment standard would "entitle[ Claimant Davis] to have the credibility of [that] evidence as forecast assumed," Miller, 913 F.2d at 1087 (internal quotation marks omitted), but his "stor[y] . . . is blatantly contradicted by the record, so that no reasonable jury could believe it," Scott, 550 U.S. at 380. Specifically, "evidence . . . of undisputed authenticity [] shows [a] material element of [Claimant Davis's] account to be blatantly and demonstrably false," Harris, 927 F.3d at 276 (internal quotation marks omitted). (See Docket Entry 16-5 at 19-30 (memorializing Claimant Davis's deposition testimony reviewing FanDuel and DraftKings records, the authenticity of which he has not disputed, and stipulating that they show that, through March 7, 2023, he accrued a net loss of nearly $30,000, with only minimal funds left on deposit).) As a result, "[the C]ourt should not adopt [Claimant Davis's] version of the facts [as to the source of Defendant currency] for purposes of ruling on [the instant M]otion," Scott, 550 U.S. at 380.

Those circumstances, especially when viewed together with all the other evidence to which Plaintiff has pointed, support summary judgment against Claimant Davis.  See, e.g., United States v. $40,000.00 in U.S. Currency, Nos. 5:17CV398, 5:17CV485, 2018 WL 2371098, at *4 (E.D.N.C. May 24, 2018) (unpublished) ("[I]nconsistent and implausible answers regarding travel plans and the source of the [defendant] money support[] a link to illegal activity. . . .  Here, [the] claimants provided implausible and vague statements as to the origins of the [defendant] money and . . . [were] unable to provide basic supporting information . . . .  Moreover, [their] . . . legitimate employment alone would not reasonably account for [their] possession of $40,000 disposable cash that [they] could afford to gamble away." (internal quotation marks omitted)); United States v. $63,289.00 in U.S. Currency, No. 3:13CV281, 2014 WL 2968555, at *6 (W.D.N.C. July 1, 2014) (unpublished) ("Unexplained wealth is formidable evidence of ill-gotten gains because gross expenditures that exceed verifiable income suggest[] the wealth was derived illegally."); United States v. $119,030.00 in U.S. Currency, 955 F. Supp. 2d 569, 585 (W.D. Va. 2013) (including – among "facts of th[e] case demonstrat[ing] a substantial connection between the seized currency and illicit drug activity" – fact that the claimant reported his purpose of cross-country travel as "perform[ance] in a rap concert and music video, but could not provide any more specifics"); $864,400.00 in U.S.

Currency, 2009 WL 2171249, at *3 ("The vague and highly implausible nature of [the claimant's] eventual explanation for his possession of the [defendant] currency also supports the Government's contention that [the claimant] engaged in illegal activity.").

Lastly (regarding the probative value of particular factual bases identified by Plaintiff in support of the instant Motion), Claimant Davis has argued that "[Plaintiff's] reliance on . . . the packaging of [Defendant] currency is speculative and does not meet the preponderance of the evidence standard. The Fourth Circuit has held that circumstantial evidence, such as the manner in which currency is packaged, must be supported by additional evidence linking the property to illegal activity." (Docket Entry 21 at 4; see also id. at 2 ("The Fourth Circuit has held that the government's burden requires more than . . . circumstantial evidence[.]").) Notably, Claimant Davis did not cite any such decision by the Fourth Circuit. (See id. at 1-4 (citing only two Fourth Circuit decisions, United States v. Thompson, No. 05-1418, 2005 WL 1865449 (4th Cir. Aug. 8, 2005) (unpublished), and Cotton, 2007 WL 664909, neither of which address consideration of packaging of cash or use of circumstantial evidence in forfeiture cases).)

Further, contrary to Claimant Davis's argument, the Fourth Circuit has held that "[t]he government may rely on circumstantial evidence to establish forfeitability," Herder, 594 F.3d at 364, and has ruled that "[t]he concealment of money (in socks and

26

elsewhere[10]) lends to the inference that the money was drug related," United States v. Puche-Garcia, No. 99-1612, 230 F.3d 1356 (table), 2000 WL 1288181, at *4 (4th Cir. Sept. 13, 2000) (unpublished) (internal citation and quotation marks omitted); see also, e.g., United States v. $32,920.00 in U.S. Currency, No. 2:20CV137, 2021 WL 825654, at *3 (D.S.C. Mar. 4, 2021) (unpublished) ("[The] claimants were carrying a large amount of cash bundled with rubber bands and hidden in various items of clothing, tending to suggest an illegitimate purpose or source of that money."); $98,699.60 in U.S. Currency, 2017 WL 750701, at *16 ("[C]ourts have relied on the quantity of currency and the manner in which it was bundled as factors supporting the entry of judgment for the government in civil-forfeiture cases."). Given that authority, when assessing whether the totality of the evidence entitles Plaintiff to summary judgment, the Court may give weight to the fact that Claimant Davis tried to "travel[ cross-country by airplane carrying socks stuffed] with bulk U.S. Currency rubber banded and organized by denomination" (Docket Entry 17 at 17), "in th[e] manner . . . of street-level drug sale proceeds" (id.).

---

10 The record, as documented in Plaintiff's Brief in Support, establishes that "[t]he currency [in Claimant Davis's duffel bag] was concealed in various socks and organized by denominations of $1, $5, $20, $50, and $100. Most of the currency was rubber-banded by denomination." (Docket Entry 17 at 4 (emphasis added) (citing Docket Entry 16-1, ¶¶ 17, 18 and Docket Entry 16-2, ¶ 8); see also id. at 6 ("The currency [hidden in the fanny pack also] was rubber-banded by denomination." (citing Docket Entry 16-1, ¶¶ 28, 29, Docket Entry 16-2, ¶¶ 16, 17, and Docket Entry 16-3, ¶¶ 14, 15)).)

To recap, Plaintiff has produced evidence, the admissibility of which Claimant Davis has not challenged, which proves at least ten facts (or sets of facts) that support the conclusion "that [Defendant] currency was intended to be furnished in exchange for drugs in other transactions or was proceeds from previous drug transactions," $115,471.00 in U.S. Currency, 2017 WL 2842778, at *4: (1) Claimant Davis's prior record of drug trafficking; (2) his recent pattern of short-notice, one-way, cross-country flights to/from a drug distribution hub; (3) his possession of a hard-shell suitcase with few contents; (4) the trained drug dog alerts to that suitcase and his fanny pack; (5) the trained drug dog alert to Defendant currency; (6) the packaging of Defendant currency; (7) his implausible story about his intended use for Defendant currency; (8) his inconsistent stories about the source of Defendant currency; (9) his inconsistent stories about the duration of his trip; and (10) the falsity of his claim that Defendant currency constituted gambling proceeds (and related proof that he lacked any lawful source for Defendant currency). Apart from the Response's above-debunked attempts to undercut the individual value of each of the last seven of those items, Claimant Davis has made no meaningful effort to contest the cumulative force of Plaintiff's foregoing proof, instead opting for undeveloped, generic arguments that mention none or only some of the relevant facts and cite four decisions without explanation. (See Docket Entry 21 at 1

28

("[Plaintiff] has not established a substantial connection between [Defendant] currency and illegal drug activity, as required under 18 U.S.C. [§] 983(c)[.]" (internal citation omitted) (citing <u>United States v. $433,980 in U.S. Currency</u>, 473 F. Supp. 2d 685 (E.D.N.C. 2007), and <u>United States v. $50,720.00 in U.S. Currency</u>, 589 F. Supp. 2d 582 (E.D.N.C. 2008)), 3 ("[Plaintiff] has not provided sufficient evidence to establish a substantial connection between [Defendant] currency and illegal drug activity. The Fourth Circuit requires that the connection be more than incidental or fortuitous. Here, [Plaintiff's] reliance on the canine alert, [Claimant] Davis's inconsistent statements, and the packaging of [Defendant] currency is insufficient to meet this standard." (internal citation omitted) (citing <u>$147,900.00 in U.S. Currency</u>, No. 1:06CV197, 2009 WL 903356 (M.D.N.C. Mar. 31, 2009) (unpublished) (Beaty, C.J.), <u>aff'd in part and vacated in part</u>, 450 F. App'x at 266)), 4 ("[Plaintiff] has failed to meet its burden of proving by a preponderance of the evidence that [Defendant] $44,379.00 in U.S. Currency is subject to forfeiture under [Section] 981(a)(1)(C)." (internal citation and italics omitted) (citing <u>$50,720.00 in U.S. Currency</u> again, along with <u>United States v. $78,850.00 in United States Currency</u>, 444 F. Supp. 2d 630 (D.S.C. 2006))).)[11]

---

11 Claimant Davis's invocation of the "substantial connection . . . require[ment in] 18 U.S.C. [§] 983(c)" (Docket Entry 21 at 1) refers to this statutory language: "[I]f the Government's theory of forfeiture is that the <u>property was used to commit or facilitate</u>
(continued...)

None of those four cited decisions warrant denial of summary
judgment for Plaintiff in this case. Three of the decisions
<u>granted summary judgment for the United States</u> on its forfeiture

---

11(...continued)
<u>the commission of a criminal offense, or was involved in the
commission of a criminal offense</u>, the Government shall establish
that there was a substantial connection between the property and
the offense." 18 U.S.C. § 983(c)(3) (emphasis added). In this
case, Plaintiff has sought forfeiture of Defendant currency (A) as
"proceeds traceable to an offense constituting 'specified unlawful
activity' . . . or a conspiracy to commit such offense, including
but not limited to the sale or exchange of a controlled substance"
(Docket Entry 1 at 1), and (B) as funds "intended to be furnished
in exchange for a controlled substance, in violation of the
Controlled Substances Act, 21 U.S.C. §§ 801 et seq., or [as]
proceeds traceable to such an exchange" (<u>id.</u>). On its face,
Section 983(c)(3) does not appear to encompass forfeiture based on
a proceeds theory or an intent-to-exchange theory, <u>see</u> 18 U.S.C.
§ 983(c)(3), and, per that plain statutory language, Judge Tilley
has rejected application of the "substantial connection" standard
in cases like this one, <u>see</u> <u>$115,471.00 in U.S. Currency</u>, 2017 WL
2842778, at *4 ("Instead of arguing that the seized currency was
used or intended to be used to facilitate [a particular drug]
offense, the Government argues that the seized currency was
intended to be furnished in exchange for drugs in other
transactions or was proceeds from previous drug transactions. As
a result, the Government does not need to establish a substantial
connection between the seized currency and [a particular] drug
sale." (citing 18 U.S.C. § 983(c)(3))); <u>see also</u> <u>$15,795.00 in U.S.
Currency</u>, 197 F. Supp. 3d at 834 n.10 ("In some cases, even when
the government is not pursuing the theory that the defendant
currency facilitated the commission of a crime, courts use the
substantial connection test . . . . An analysis of the law leads
this Court to apply the substantial connection test only to the
Government's theory that the defendant currency was used to
facilitate the commission of a crime, not to its theory that the
defendant currency is proceeds of a crime."). However, the Fourth
Circuit recently stated that, "when pursuing forfeiture on either
[facilitation or proceeds] theories, the Government must show a
'substantial connection between the property and the offense.'"
<u>McClellan</u>, 44 F.4th at 205 (quoting 18 U.S.C. § 983(c)(3)).
Accordingly, this Recommendation treats the substantial connection
standard as applicable to Plaintiff's forfeiture claims.

30

claim(s).  See $147,900.00 in U.S. Currency, No. 1:06CV197, 2009 WL
903356, at *7-10; $50,720.00 in U.S. Currency, 589 F. Supp. 2d at
582-84; $433,980 in U.S. Currency, 473 F. Supp. 2d at 686-92.  In
the fourth decision, the court denied the claimants' motion to
dismiss the forfeiture action.  See $78,850.00 in United States
Currency, 444 F. Supp. 2d at 631-40.  Claimant Davis has provided
no rationale for the Court to deduce from those dispositions – all
of which favored forfeiture claims by the United States – that
Plaintiff has failed to show entitlement to judgment as a matter of
law in this case.  (See Docket Entry 21 at 1-4.)[12]

_____

        12 The Fourth Circuit vacated in part the grant of summary
judgment for the United States in one of those four cases and
"remand[ed] for further proceedings to determine whether [two
portions of the defendant] currency [were] subject to forfeiture:
(1) the 'old' currency found in the safe . . .; and (2) the $9,000
found in [the claimant's] dresser drawer."  Currency, U.S.,
$147,900.00, 450 F. App'x at 266.  That remand resulted because the
claimant had come forward with credible evidence of innocent
sources of those particular funds.  See id. at 265-66.  That result
does not aid Claimant Davis because (for reasons already discussed)
the record in this case conclusively refutes his story about the
source of Defendant currency.  As a final matter, concerning
authority cited in the Response, the Court may note that, for the
uncontroversial position that Plaintiff "must demonstrate by a
preponderance of the evidence that [Defendant currency] is subject
to forfeiture" (Docket Entry 21 at 2), Claimant Davis cited United
States v. Approximately $13,205.54 in U.S. Currency seized from
Rahkim Franklin on Aug. 21, 2018 in Rutherford Cnty., No. 1:19CV7,
2022 WL 813817 (W.D.N.C. Mar. 16, 2022) (unpublished) (see Docket
Entry 21 at 2).  The court there concluded that "the totality of
the evidence presented by the Government fail[ed] to establish by
a preponderance of the evidence that the [d]efendant [c]urrency
. . . was proceeds traceable to an exchange for controlled
substances . . . ."  Approximately $13,205.54 in U.S. Currency,
2022 WL 813817, at *13.  Numerous distinguishing facts render that
case inapposite here.  See, e.g., id. at *10 ("[T]he Government has
                                                      (continued...)

Conversely, abundant authority (much of it discussed above and thus not rehashed below) supports summary judgment in Plaintiff's favor. As a neighboring court has well-summarized:

> Numerous civil-forfeiture cases . . . involve a large sum of currency seized . . . at an airport. In such cases, courts have looked at several common factors when determining forfeitability, including (1) the quantity of currency, (2) the manner in which it was packaged or concealed, (3) false and inconsistent statements regarding the currency when questioned by law enforcement, (4) a positive alert to the currency by a trained drug dog, and (5) the claimant's implausible and uncorroborated story regarding the source or intended use of the defendant currency.

$98,699.60 in U.S. Currency, 2017 WL 750701, at *15 (collecting cases). The record in this case (detailed previously) shows that all "these factors [and more] taken together support forfeiture of [ D]efendant property," id. at *16. See id. at *16-20 (cataloging facts such as the claimant's "transport[ation of the defendant] $99,799.60 in U.S. currency on a known drug corridor," all "packaged [in a way that] . . . does not comport with a legitimate business purpose," the claimant's "inability to tell a consistent story regarding his ownership or possession of the defendant

---

12(...continued)
failed to prove that [the claimant] has a history of distributing controlled substances."), *11 ("[The claimant] has provided evidence of sufficient sources of income to justify the expenditures that he has made."), *12 (rejecting contention by United States that the claimant made "inconsistent statements"), *13 (concluding, based on the claimant's admitted, recent use of marijuana, along with presence of remnants of such use in vehicle containing the defendant currency, that "positive canine alert [wa]s not at all probative of the [defendant] currency having been obtained through illicit means").

32

currency," including its "source," trained drug dog's "positive alert," the claimant's "history of involvement with illegal drugs," and the claimant's "implausible, uncorroborated story concerning the [source of the] defendant currency," which other credible evidence contradicted, in "find[ing] that the greater weight of the evidence establishe[d] that the defendant currency [wa]s forfeitable as . . . proceeds of drug activity" and that "[t]he government also satisfied its burden [to show] that the defendant currency . . . had much more than an incidental or fortuitous connection to drug activity"); see also, e.g., United States v. $124,700 in U.S. Currency, 458 F.3d 822, 826 (8th Cir. 2006) ("The totality of the[] circumstances – the large amount of concealed currency, the strange travel pattern, the inability to identify a key party in the purported innocent transaction, the unusual [travel-related] papers, the canine alert, and the false statements to law enforcement officers – leads most naturally to the inference that [the claimant] was involved in illegal drug activity, and that the [defendant] currency was substantially connected to it."); $119,030.00 in U.S. Currency, 955 F. Supp. 2d at 584 ("The substantial connection test requires 'more than an incidental or fortuitous connection to criminal activity,' but does not pose a particularly high hurdle." (internal citation omitted) (quoting United States v. Schifferli, 895 F.2d 987, 990 (4th Cir. 1990), and citing United States v. Borromeo, 995 F.2d 23, 26 (4th Cir. 1993)).

33

Put another way, Claimant Davis "has not 'come forward with specific facts showing that there is a genuine issue for trial.'" $119,030.00 in U.S. Currency, 955 F. Supp. 2d at 587 (quoting United States v. $95,945.18 in U.S. Currency, 913 F.2d 1106, 1111 (4th Cir. 1990)). "[He] provided virtually no details concerning his [purported] plans to [use Defendant currency] . . . . His description of the planned trip to [San Francisco] yielded only sketchy details at odds with [other evidence foreclosing lawful possession of] such a large sum of money." Id. Bluntly speaking, his "claimed source of funds is simply incredible . . . ." Id.

"In sum, the totality of the circumstances . . . show that it is more likely true than not that [Defendant ] currency . . . was . . . intended to be furnished in exchange for a controlled substance, was proceeds traceable to such an exchange, or was money constituting or derived from proceeds traceable to specified unlawful activity . . . ." $115,471.00 in U.S. Currency, 2017 WL 2842778, at *6; see also id. (noting that "specified unlawful activity . . . includes the exchange of a controlled substance in violation of state or federal law"). Although Plaintiff "has met its burden, [Claimant Davis theoretically still could] argue . . . that he is an innocent owner of [Defendant] property, but he must prove this defense by a preponderance of the evidence." Id. (citing 18 U.S.C. § 983(d)(1)); accord, e.g., $25,325.00 in U.S. Currency, 2023 WL 7409254, at *9. The Brief in Support of the

34

instant Motion, anticipating that defense, argues that "[Claimant] Davis cannot meet his burden of proof because he cannot show that he accumulated [Defendant] $44,379.00 in U.S. Currency in cash from legitimate, verifiable sources." (Docket Entry 17 at 21.) Claimant Davis did <u>not</u> explicitly address the innocent owner defense in the Response (<u>see</u> Docket Entry 21 at 1-4) and, to the extent his previously discussed contention that Defendant currency constitutes gambling proceeds indirectly disputes Plaintiff's position on this issue, "th[at] dispute[ is] not genuine, as a reasonable jury could not find in favor of [Claimant Davis] based on the evidence," <u>$115,471.00 in U.S. Currency</u>, 2017 WL 2842778, at *7. "Taken in its totality, Claimant[ Davis's] account is just too . . . implausible to be found credible." <u>$63,289.00 in U.S. Currency</u>, 2014 WL 2968555, at *7; <u>see also</u> <u>$15,795.00 in U.S. Currency</u>, 197 F. Supp. 3d at 836 ("Most problematic for [the claimant's] ability to meet his burden by a preponderance of the evidence that he is an innocent owner . . . is the fact that he knowingly made a false statement . . . explain[ing] the source and purpose of the defendant currency. In sum, the evidence is not such that a reasonable jury could return a verdict for [him].").

"[Plaintiff] has thus shown undisputed evidence which establishes by a preponderance of the evidence that there is a substantial connection between [Defendant currency] and the sale and distribution of [] controlled substances . . . . [Claimant

35

Davis] has not established any defenses to the forfeiture. Therefore, [Plaintiff] is entitled to summary judgment." <u>United States v. $94,200.00 in U.S. Currency</u>, No. 1:11CV609, 2012 WL 2885129, at *6 (M.D.N.C. July 13, 2012) (unpublished) (Eagles, J.).

<u>CONCLUSION</u>

Viewing the evidence in the light most favorable to Claimant Davis and granting him the benefit of any <u>reasonable</u> inference, the record establishes Plaintiff's entitlement to judgment as a matter of law on its forfeiture claim (as against Claimant Davis).

**IT IS THEREFORE RECOMMENDED** that the instant Motion (Docket Entry 16) be granted and that judgment be entered in favor of Plaintiff on the claim to Defendant currency by Claimant Davis.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

August 19, 2025

36